## Knisely *v.* Cotterel.   Wood *v.* Vare.

*Taxation—Mercantile license tax—Constitutional law—Act of May 2, 1899, P. L. 184.*

The act of May 2, 1899, to provide revenue by imposing a mercantile license tax " on vendors of or dealers in goods," is a revenue act and involves no questions under the police power.

The act of May 2, 1899, is not a tax upon property but upon the business of vending merchandise, and the act does not violate section 1 of article 9 of the constitution, requiring that " all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

It seems that even if the tax imposed by the act was a tax upon property directly, it could be sustained as a classification according to the use and purposes for which the property was held.

The classification of vendors into wholesale and retail, and the subclassification of dealers at an exchange or board of trade, is legitimate classification, inasmuch as it is based on the differences in the manner of transacting business.

The act of May 2, 1899, is " a general law " within the meaning of the constitution, notwithstanding that it provides for a difference in the number and mode of appointment of the appraisers in the counties generally, and in cities of the first class.

All the provisions relating to the tax itself, the classes of persons subject to it, and its amount in each case, the mode of assessment and the duties of assessors, in relation to it, and the right of ultimate appeal by the citizen to the court, are uniform and prescribed by a general law applicable alike all over the state. The sole variations are in the number and mode of appointment of the appraisers. The generality of the law is not destroyed by such slight differences in its machinery of application.

The act of May 2, 1899, does not violate the prohibition in section 7 of article 3 of the constitution against local or special laws " regulating the affairs of counties, cities," etc., or " prescribing the powers and duties of

officers in counties, cities," etc. The "affairs" which are regulated are not the affairs of the city but of the state.

The constitutional prohibition against local laws prescribing the powers and duties of officers in counties and cities, relates to the duties of such officers in their municipal capacity. There is no prohibition to the state to impose additional duties to itself on city officers virtute officii. The state may appoint its own agent to collect its own tax, even though such agent be also for other purposes a municipal officer, and his duties as state agent will not necessarily blend or become part of his duties as a city officer.

The 10th section of the act of May 2, 1899, providing that the rate of commissions, mileage, etc., shall remain the same as now fixed by existing law does not offend against section 6 of article 3 of the constitution, which requires all laws revived, amended, or the provisions thereof extended or conferred, shall be re-enacted at length.

The act of May 2, 1899, does not invade the individual liberty of a citizen nor contravene the bill of rights of the constitution of Pennsylvania, or the fourth, fifth and fourteenth amendments of the constitution of the United States.

The fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation.

Argued May 29, 1900. Appeal, No. 18, May T., 1900, by defendant, from judgment of C. P. Dauphin Co., No. 91, Commonwealth Docket, 1900, on case stated in the case of A. G. Knisely, Treasurer of the County of Dauphin, for the use of the Commonwealth of Pennsylvania, v. David W. Cotterel. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Argued May 29, 1900. Appeal, No. 182, Jan. T., 1900, by plaintiff, from decree of C. P. No. 2, Phila. Co., March T., 1900, No. 475, refusing preliminary injunction in case of Edward R. Wood et al. v. William S. Vare et al. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Case stated and bill in equity to determine the constitutionality of the mercantile license tax act of May 2, 1899.

The facts appear by the opinion of the Supreme Court, and by the opinion of SIMONTON, P. J., in No. 18, May term, 1900, which was as follows:

This is a case stated in which the parties agree that defend-

ant is a retail vendor or dealer, subject to the mercantile license tax imposed on vendors and dealers in goods, wares and merchandise by the Act of May 2, 1899, P. L. 184, and that everything prescribed by the act has been done to fix his liability to a tax of $18.40, for which amount it is agreed that judgment shall be entered against him if the court be of opinion that the act is constitutional, otherwise judgment to be entered in his favor.

The act in question is entitled, " An act to provide revenue by imposing a mercantile license tax on vendors of or dealers in goods, wares and merchandise and providing for the collection of said tax ; " and section 1 enacts " that from and after the passage of this act each retail vendor of or retail dealer in goods, wares and merchandise shall pay an annual mercantile license tax of one mill additional on each dollar of the whole volume, gross, of business transacted annually. Each wholesale vendor of or wholesale dealer in goods, wares and merchandise shall pay an annual mercantile license tax of $3.00, and all persons so engaged shall pay one half mill additional on each dollar of the whole volume, gross, of business transacted annually. Each dealer in or vendor of goods, wares and merchandise at any exchange or board of trade shall pay a mercantile license tax of twenty-five cents on each thousand dollars' worth, gross, of goods so sold." The 2d section defines the terms " wholesale dealer " and " retail dealer."

Defendant's principal objection to the act is that as the 1st section taxes retailers at a different and higher rate than wholesalers it is repugnant to section 1, article 9 of the constitution, which ordains that " all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws."

We think it important at the outset to determine what is the subject of the tax. It is called in the title and in the several sections a " mercantile license tax," a " mercantile tax " and a " license tax." The title declares that the purpose of the act is to provide revenue. The retailer is to pay one mill and the wholesaler one half mill on each dollar of the whole volume, gross, of business transacted annually. It seems to have been considered in Williamsport v. Wenner, 172 Pa. 173, that a license

tax to be paid by defendant, graduated by the amount of his annual sales, was "a tax on the defendant's property estimated by the volume of his annual sales." But the case did not require a determination of this point, and we venture to think that if it had been carefully considered the tax would have been found to be on the business measured by the amount transacted. Manifestly a tax levied on the property generally of all the merchants in a city estimated by the amount of their annual sales in their business could not be "uniform on the same class of subjects." But if the class of subjects is their sales or business, such a tax would be uniform. By this act the amount of a retailer's tax is to be "one mill on each dollar of the whole volume, gross, of business transacted annually." The volume of business measured in dollars fixes the amount of the tax, and this seems to determine that it is a tax on the business and not on the property of the vendor or dealer. It certainly is not a tax on his property generally, for it need not appear whether he owns any property or not, neither can it be a tax on the money invested, for manifestly his gross sales will not measure or determine the amount of money invested during or at the end of the year.

In Reading R. R. Co. v. Penna., 15 Wall. 284, a tax on the gross receipts of a railroad company derived from interstate transportation, which had been decided in this court by the late President Judge PEARSON to be. unconstitutional, because a tax on interstate commerce and business, was, reversing the court below, decided by the Supreme Court of Pennsylvania and the Supreme Court of the United States to be a tax on the property of the company. But later, in a similar case also from this court, the above decision was overruled and the decision of Judge PEARSON that the tax was on the business was affirmed: Philadelphia and Southern Steamship Co. v. Pennsylvania, 122 U. S. 327.

In Kittanning Coal Co. v. Commonwealth, 79 Pa. 100, a tax "at the rate of three cents upon each and every ton of 2,240 pounds of coal mined or purchased" by coal companies was decided to be a tax, not on the coal mined, but on the franchise or right of the company to mine measured by the amount of its business.

In Philadelphia Contributionship for Insurance, etc., v. Commonwealth, 98 Pa. 48, the tax imposed by section 10 of the Act

of June 7, 1879, P. L. 118, of three per cent upon the annual net earnings or income of the corporations therein mentioned, was decided to be a tax, not on the money and receipts of such corporations but on their franchises, the amount of the net earnings or income being used simply as a measure of the amount of the tax. Mr. Justice STERRETT, delivering the opinion of the court, said : " There is an obvious difference between a direct tax on the property of a corporation and a franchise tax, measured by its earnings, which, proximately at least, represent either the value of the franchise granted or the extent of its exercise. The distinction has been repeatedly recognized by both federal and state courts." The doctrine of this case was reaffirmed and applied in Com. v. Lake Shore, etc., R. R. Co., 150 Pa. 234, where it was decided that a tax on net earnings or income of trust companies, under section 27 of the act of June 1, 1889, was a tax, not on property, but on the franchises of the companies. In Society for Savings v. Coite, 6 Wall. 594, where certain corporations were required to pay annually a tax equal to three fourths of one per cent on the total amount of their deposits, it was held that this was a valid franchise tax, and not a tax on property, and in Provident Institution v. Mass., 6 Wall. 611, the same doctrine was declared.

On the analogy of these and many like cases that might be cited, we are of opinion that the tax in question here is a tax, not on the property of the dealers or vendors, but on their business transacted during the preceding year measured by its volume in dollars.

This brings us to the question of classification ; and the question is, whether the business of vendors or dealers of goods, wares and merchandise may be classified into the business of retail dealers, and the business of wholesale dealers. If the classification be legal the taxes are uniform on the same class ; for, as was said by Chief Justice AGNEW in Kittanning Coal Co. v. Commonwealth, supra, " by classification inequality between persons, natural or artificial, can be avoided. It is clear, therefore, that the moment we concede the power to classify, we have disposed of the question of uniformity, for then all that is required by the constitution is uniformity of taxes among the members of the class. Now the power to classify is not only retained in clear language, but was held by the court to be

continued in the case of Kitty Roup v. The City of Pittsburg, 81* Pa. 211. This power was possessed under the constitution of 1790, had been exercised in numerous laws, and existed when the new constitution was framed and adopted." And citing Kitty Roup's case, Mr. Justice CLARK said in Com. v. Delaware Division Canal Co., 123 Pa. 623: "The moment we concede the power to classify we have disposed of the question of uniformity, for then all that is required by the constitution is that the taxes shall be uniform upon the members of a class. Classification for purposes of taxation, as a general rule, is a matter for the legislature; it is the uniformity of taxation, according to that classification, which is for the courts."

The legality of classification for purposes of taxation has always been recognized. Speaking before the adoption of the present constitution, Mr. Justice SHARSWOOD said, in Durach's Appeal, 62 Pa. 494: "In the legitimate exercise of the power of taxation, persons and things always have been and may constitutionally be classified. No one has ever denied this proposition. To hold otherwise would logically require that all the subjects of taxation, as well persons as things, should be assessed, and an equal rate laid ad valorem. Practically no more unequal system could be contrived."

The power to classify has been freely exercised under the present constitution. In Kittanning Coal Co. v. Com., supra, it was held legal to form for taxation a class of corporations having the right to mine, purchase or sell coal. The subject of classification is there fully discussed, and the conclusion is reached that without the power to classify taxation could not be made uniform. There is also a very full discussion of the subject in Com. v. Delaware Division Canal Co., supra, where it is said that "the power to impose taxes for the support of the government, subject to the limitations of the constitution, still belongs to the legislature; the selection of the subjects, their classification, and the methods of collection are purely legislative matters. When the action of the legislature, with respect to these matters, is not repugnant to the constitution, it would certainly be a case of the grossest inequality, which would call for the intervention of the courts : Kelley v. City of Pittsburg, 85 Pa. 170. It may be conceded, however, that classification should be made according to some reasonable,

practical rule, drawn from experience, which would prevent a gross inequality in the burdens of taxation." Many instances of classification are given by Mr. Justice CLARK, writing the opinion in this case, and among others he says : " Some classes of corporations are taxed upon net earnings or income ; others upon capital stock, the value thereof to be ascertained by their annual dividends or in a certain event upon the actual value of their shares ; others upon their gross receipts ; insurance companies upon the gross amount of their premiums ; coal and mining companies at a specific sum for every ton of coal mined," etc.

In Com. v. Edison Electric Light Co., 145 Pa. 131, manufacturing corporations were, for the purpose of taxation, divided by the Supreme Court into two classes. And in Com. v. Sharon Coal Company, 164 Pa. 304, the court says : " It has been settled that the legislature can, without making the revenue statute obnoxious to the constitution, classify corporations for purposes of taxation; may sever a small class from a larger one ; might subject one class to taxation, and leave others untaxed : Commonwealth v. Germania Brewing Co., 145 Pa. 85, and the cases there cited. . . . And in Commonwealth v. Delaware Division Canal Co., it was decided that a different basis of taxation may be adopted on mortgages and loans held by individuals and those held by corporations." In the Brewing Company case, it was decided that corporations manufacturing intoxicating liquor or illuminating gas might be legally taxed as one class, while other manufacturing corporations were exempt from taxation. In this case a very full discussion of the subject of classification will be found in the opinion of the court below by Judge Mc-PHERSON, on which the judgment was affirmed by the Supreme Court. The subject is also discussed and elaborated in Commonwealth v. Delaware Division Canal Co., supra, in the opinion of Mr. Justice CLARK, to which we refer.

In Williamsport v. Brown, 84 Pa. 438, the division of real estate in one ward of a city into three classes for the purposes of taxation was upheld, the court saying : " The power to classify the subjects of taxation still remains under the new constitution : Kittanning Coal Co. v. Com., 79 Pa. 100." In Pittsburg v. Coyle, 165 Pa. 61, it was decided that where a municipality has the power to impose a tax on brokers, it may tax merchandise brokers and real estate brokers without taxing other classes

of brokers, and such a tax does not violate the constitutional provision that taxation shall be uniform. In this case Mr. Justice GREEN, delivering the opinion, refers to and quotes from "the very able opinion by Judge McPHERSON of Dauphlin common pleas, in the case of Commonwealth v. Germania Brewing Co., 145 Pa. 83," with approval of the principles of classification there laid down.

In the light of these examples of valid classification, we do not see how it can be doubted that vendors or dealers in goods, wares and merchandise can legally be classified into wholesalers and retailers, or that wholesaling can be taxed at one rate and retailing at another. It is reasonable to presume that wholesalers sell in larger quantities at smaller profit in proportion to the amount of capital involved, and that therefore a smaller tax rate on the gross amount of their sales brings to the state a relative proportion of their actual profits. We have not been referred to, and we do not know, of any case in which classification for purposes of taxation has been decided unconstitutional; we have a number of cases, beginning with In re Washington Avenue, 69 Pa. 352, in which failure to classify has led to unconstitutional taxation.

The last sentence of the 1st section seems to introduce a third class composed of certain members of the two principal classes. We do not stop to consider whether this is a legal class or not. The two classes include all dealers or vendors, and if the subclass cannot stand this sentence becomes inoperative without invalidating the rest of the act.

It is also argued that the act is unconstitutional and void because by section 3 mercantile appraisers in cities of the first class are to be appointed by the auditor general and treasurer of the city for three years, when in all the other counties of the state they are to be appointed by the county commissioners. It is claimed because of this that the tax is not levied and collected by general laws. We do not consider it necessary to discuss this point at length. If it be well taken, the whole system of state taxation of personal property is void. The general revenue acts of 1889 and 1891, under which millions of tax on personal property are annually collected, provide that in cities coextensive with counties, the duties in relation to those taxes, which in the other counties of the state are to be performed by

the county commissioners, are to be performed by the board of revision of taxes. Section 3 of this act is the same as section 3 of the Act of April 20, 1887, P. L. 60, relating to appointment of mercantile appraisers. The duties of mercantile appraisers as well as the subjects and rate of taxation are the same in all the counties of the state, and the fact that the number of appraisers and term of their office and the appointing power differ in Philadelphia county from the other counties in the state does not, in our opinion, tend in the slightest degree to destroy uniformity in the taxation or to make the taxation act either local or special. It is drawn in this respect on the same lines as prior mercantile tax acts and as the general revenue acts taxing personal property, and is a general law.

It is also contended that section 10 of the act, which provides that the commissions and fees of treasurers and the fees and mileage of appraisers " shall be and remain as provided in the acts of assembly now in existence," is repugnant to section 6, article 3 of the constitution, which provides that " no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only." We are unable to see any force in this objection. The section does not revive, amend or extend the provisions of any former act. The laws referred to in section 10 are " existing laws," and therefore they are not " revived." The matters to which they relate are to " remain the same as now fixed " by the laws, therefore they are not " amended." They all relate to the imposition and collection of a mercantile tax, therefore, their provisions are not " extended." The laws referred to simply remain as parts of a general system, all of which not inconsistent with the later acts are not repealed by it: Clearfield County v. Cameron Township Poor District, 135 Pa. 86. If section 10 were unconstitutional, it would simply drop out of the act without materially affecting its operation.

It is also argued that sections 4 and 5 of the act, which authorized the auditor general to prepare proper blanks, upon which dealers are required to make return of the amount of their sales and authorize him on refusal to make returns to examine their books and papers in order to ascertain the amount of their sales, are repugnant to the 9th and 10th sections of article 1 of the constitution of Pennsylvania and to the fourth and

fifth amendments and the 1st section of the fourteenth amendment of the constitution of the United States. This objection seems to be somewhat belated. All the powers conferred by these sections and other powers—from the point of view of the defendant—still more objectionable have been vested in the auditor general of Pennsylvania at all times since the passage of the act of 1811, relating to the settlement of public accounts: 5 Sm. Laws, 228; 2 Brightly's Purdon (12th ed.), p. 1743. This act and its several supplements and the successive revenue acts imposing taxes on individuals and corporations have continuously conferred on the auditor general authority to prepare blanks, to be filled up and sworn to by individual taxables and officers of taxable corporations, and hundreds of millions of dollars of taxes have been assessed and collected on such returns; and the act of 1811 authorizes the auditor general to imprison for contempt persons failing to · furnish him the information demanded. See Commonwealth v. Edgerton Coal Co., 164 Pa. 303. We do not therefore feel called upon to enter into a discussion of the constitutionality of these sections.

After a full and careful consideration of all the objections to the constitutionality of the act, and the arguments of the learned counsel in support of the objections, we are not convinced that it is in any of its provisions repugnant to the state or federal constitution. Judgment is therefore directed to be entered in favor of plaintiff against defendant for $18.40.

*Error assigned* in No. 18, May term, 1900, was judgment for plaintiff on case stated.

*Error assigned* in No. 182, January term, 1900, was decree refusing preliminary injunction.

*Lyman D. Gilbert*, for appellant in No. 18, May term, 1900. —The act of assembly taxes the property of the appellant, and is unconstitutional, because it is in violation of section 1, article 9 of the constitution of Pennsylvania: Allentown v. Gross, 132 Pa. 319; Williamsport v. Wenner, 172 Pa. 173.

When the legislature never intended to exempt dealers or vendors of goods, wares or merchandise at any exchange or board of trade from taxation, but to tax them, and to tax them as a separate class, any judicial effort to destroy that class and

make its members part of another class, to which the legislature did not intend them to belong, and to tax them at a rate that the legislature never sanctioned, is an exercise of legislative and not judicial power, and cannot be sustained: Com. v. Potts, 79 Pa. 164; Philadelphia v. Barber, 160 Pa. 123; Warren v. Charlestown, 2 Gray (Mass.), 84; Kittanning Coal Co. v. Com., 79 Pa. 100; Wheeler v. Philadelphia, 77 Pa. 338.

That the exclusion of the merchandise vendors of the city of Philadelphia from the provisions of this statute makes the act in question a local law, is declared in the following decisions: Morrison v. Bachert, 112 Pa. 322; Weinman v. Wilkinsburg, etc., Pass. Ry. Co., 118 Pa. 192; Ayars's Appeal, 122 Pa. 266; Opening of Ruan Street, 132 Pa. 257; Paving of Wyoming Street, 137 Pa. 494; Pittsburg's Petition, 138 Pa. 401–435; City of Scranton v. Whyte, 148 Pa. 419; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 233; Philadelphia v. Westminster Cemetery Co., 162 Pa. 105; Chalfant v. Edwards, 173 Pa. 246.

The act of assembly of May 2, 1899, is unconstitutional because it is in violation of the 7th section of article 3 of the constitution: Morrison v. Bachert, 112 Pa. 321; Wheeler v. Philadelphia, 77 Pa. 338; Opening of Ruan Street, 132 Pa. 257; Paving of Wyoming Street, 137 Pa. 494; Morrison v. Bachert, 112 Pa. 322; Weinman v. Wilkinsburg, etc., Pass. Ry. Co., 118 Pa. 192; Ayars's Appeal, 122 Pa. 266; Pittsburg's Petition, 138 Pa. 401–435; City of Scranton v. Whyte, 148 Pa. 419; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 233; Philadelphia v. Westminster Cemetery Co., 162 Pa. 105; Chalfant v. Edwards, 173 Pa. 246.

*Alexander Simpson, Jr.,* and *M. Hampton Todd,* for appellants in No. 182, January term, 1900.—The act provides one system for assessing and collecting mercantile license tax within cities of the first class and another system for the counties composing the rest of the state. This is local legislation: Davis v. Clark, 106 Pa. 377; Paving of Wyoming Street, 137 Pa. 494; Scranton School District's App., 113 Pa. 176; Scranton v. Silkman, 113 Pa. 191; Weinman v. Wilkinsburg, etc., Pass. Ry. Co., 118 Pa. 192; Chalfant v. Edwards, 173 Pa. 246; Ayars's App., 122 Pa. 266.

The act is unconstitutional because it discriminates in favor of dealers or vendors at any exchange or board of trade as against dealers or vendors who conduct the same business elsewhere, and in this particular violates article 9, section 1 of the constitution of this commonwealth, and the fourteenth amendment, section 1 of the constitution of the United States: Oil City v. Oil City Trust Co., 151 Pa. 454; Chaddock v. Day, 4 Lawyers' Rep. Ann. 809; Loftin v. Citizens.' Nat. Bank, 85 Ind. 346; Williams v. Cammack, 27 Miss. 210; Amer. Union Express Co. v. City of St. Joseph, 66 Mo. 675; Hale v. City of Kenosha, 29 Wis. 599; Norris v. City of Waco, 57 Texas, 635; Youngblood v. Sexton, 32 Mich. 406; Commissioners of Ottawa Co. v. Nelson, 19 Kan. 234; State v. Rolle, 30 La. Ann. 991; New Orleans v. Davidson, 30 La. Ann. 555; Weeks v. Milwaukee, 10 Wis. 242; Banger's App., 109 Pa. 79; Cope's Est., 191 Pa. 21; Knisely v. Cotterel, 3 Dauphin Co. 120.

The provisions of the act, in so far as they authorize the county treasurer to issue subpœnas and attachments to compel the attendance of citizens and the production of private books and papers, are contrary to article 1, section 9 of the constitution of the commonwealth, and to the fourth and fifth amendment to the constitution of the United States: Boyd v. United States, 116 U. S. 616; Horstman v. Kaufman, 97 Pa. 147; Counselman v. Hitchcock, 142 U. S. 547.

The act offends against article 3, section 6 of the constitution: Donohugh v. Roberts, 11 W. N. C. 186; Barrett's App., 116 Pa. 486; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Perkins v. Phila., 156 Pa. 554.

*John P. Elkin*, attorney general, and *M. E. Olmstead*, with them *Frederic W. Fleitz*, deputy attorney general, *A. T. Freedley* and *A. C. Stamm*, for appellees.—The act of May 2, 1899, is not prohibited local legislation: Sugar Notch Borough, 192 Pa. 355; Sharpless v. Phila., 21 Pa. 164; Speer v. School Directors, etc., of Blairstown, 50 Pa. 158; Com. v. Smith, 4 Binney, 123; Penna. R. Co. v. Riblet, 66 Pa. 164; Bartley v. Patton, 19 Phila. 496; Mayer v. McCamant, 20 Phila. Repr. 236; Jadwin v. Hurley, 10 Pa. Superior Ct. 104; Jermyn v. Scranton, 186 Pa. 601; Com. v. Del. Div. Canal Co., 123 Pa. 594; Durach's App., 62 Pa. 491; Com. v. Durkin, 109 Pa. 138;

Wheeler v. Phila., 77 Pa. 338; Williamsport v. Wenner, 172 Pa. 173; Hadtner v. Williamsport, 15 W. N. C. 138; Lloyd v. Smith, 176 Pa. 218; Seabolt v. Commissioners of Northumberland County, 187 Pa. 318; Com. v. McCandless, 21 W. N. C. 162; Com. v. Sellers, 130 Pa. 32; Bartley v. Patton, 19 Phila. 496.

The classification for purposes of taxation in the act of May 2, 1899, is a valid exercise of legislative power: Com. v. Sharon Coal Co., 164 Pa. 304; Fox's App., 112 Pa. 337; Com. v. Del. Division Canal Co., 123 Pa. 620; Pittsburg v. Coyle, 165 Pa. 61; Com. v. Clark, 10 Pa. Superior Ct. 507; Kittanning Coal Co. v. Com., 79 Pa. 104; Roup's Case, 81* Pa. 211; Durach's App., 62 Pa. 494; Bell's Gap R. R. Co. v. Penna., 134 U. S. 237.

The act of May 2, 1899, is not invalid by reason of the provision authorizing the county treasurer to issue subpœnas or attachments to compel the production of books and papers: Fox's App., 112 Pa. 337; Com. v. Del. Div. Canal Co., 123 Pa. 594; Durach's App., 62 Pa. 491; Bartley v. Patton, 19 Phila. 496; Krug v. Behringer, 6 Pa. Dist. Repr. 770; Page v. Williamsport Suspender Co., 191 Pa. 511.

The act is not in contravention of article 3, section 6 of the constitution of this commonwealth, by reason of section 10 of said act providing that certain commissions and fees shall be and remain as now fixed by existing laws: Searight's Est., 163 Pa. 210; In re Greenfield Avenue, 191 Pa. 290; Pinkerton v. Penna. Traction Co., 193 Pa. 233.

If the plaintiff's contentions were all well founded, they would simply go to certain separate portions of the act and the validity of the remaining sections would not be thereby impaired: Page v. Williamsport Suspender Co., 191 Pa. 512; Fox's App., 112 Pa. 337; Sanderson on Statutes, 215.

OPINION BY MR. JUSTICE MITCHELL, July 11, 1900:

These two cases may conveniently be considered together as both raise the same question of the constitutionality of the Act of May 2, 1899, P. L. 184, "to provide revenue by imposing a mercantile license tax on vendors of or dealers in goods," etc.

The act is frankly and professedly a revenue act, and therefore we have no complication with questions under the police power.

The act provides that "each retail vendor of or retail dealer in goods, wares and merchandise shall pay an annual mercantile license tax of $2.00, and all persons so engaged shall pay one mill additional on each dollar of the whole volume, gross, of business transacted annually. Each wholesale vendor of or wholesale dealer in goods, wares and merchandise shall pay an annual mercantile license tax of $3.00, and all persons so engaged shall pay one half mill additional on each dollar of the whole volume, gross, of business transacted annually. Each dealer in or vendor of goods, wares or merchandise at any exchange or board of trade shall pay a mercantile license tax of twenty-five cents on each one thousand dollars' worth, gross, of goods so sold."

1. The first and most strenuous objection made is that the act violates section 1 of article 9 of the constitution requiring that "all taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws;" and that it does so because being a tax upon property it taxes property at different rates as against retailers and against wholesalers, and again as against those dealing through an exchange or board of trade. The objection is thus clearly summed up with great compactness in the argument of the distinguished counsel for appellant in the first case: "The distinction here made, which is legislatively regarded as the justification for this arbitrary taxation, is, not the amount of the property of merchandise vendors; not a difference in the amount of the property vended; not a difference in the manner of vending it; not a difference in the persons vending it; but solely a difference in the persons to whom that vending is done." And it is added that the provision in reference to dealers at an exchange is open to the further objection that it is based "exclusively and arbitrarily upon the place where the sales are made, irrespective of those who participate in them, either as vendors or as vendees."

The foundation on which this argument rests, it will be perceived, is that the tax is laid specifically upon property. Conceding for present purposes that this is its true character, does the consequence necessarily follow that it is so wanting in uniformity as to transgress the constitutional restrictions? Assuming it to be intended as a tax on property, the basis of dis-

tinction in the legislative intent clearly was property kept for sale by regular dealers in the course of their business, and the tax was graduated and classified by the amount and method of the sales. The purpose for which property is kept or used has long been a recognized and to some extent a favorite basis for distinction in taxation. Thus household and kitchen furniture in private use have been exempted while the same articles as stock in trade have been taxed; carriages kept for pleasure and watches for private use have been taxed as such, while carriages in livery stables and watches in a jeweler's stock have been exempted or taxed in a different manner or at a different rate. Other examples might be given, and the very tax in controversy here upon dealers, distinguished into retailers and wholesalers, has in one form or another, closely analogous, been on the statute books so long that it is one of the most familiar in the history of our taxation. This subject will be further considered later on, but enough has been said here, we think, to show that even as a tax on property it is not unconstitutional for want of uniformity.

But another and even clearer ground upon which this act can be sustained is that the tax imposed is not specifically on property but on the business of selling.

The argument that the tax is upon property is based on two cases in this court, City of Allentown v. Gross, 132 Pa. 319 and Williamsport v. Wenner, 172 Pa. 173, and not upon the decisions themselves, but upon language supposed to indicate the ratio decidendi. Both were per curiam opinions in which the grounds of decision were not discussed further than by approval of the judgments of the court below. It is necessary therefore to examine just what such approval involves. In Allentown v. Gross an ordinance had been passed imposing a tax upon all dealers, graduated according to the amount of their gross annual sales, and another ordinance providing for the issue of licenses, inter alia, to hotel and restaurant keepers. The report of the case does not give the latter ordinance further than the statement that the license was to be " at certain specified rates," presumably based as under the prior ordinance on the gross annual sales. The defendant, appellant, was assessed as a restaurant keeper in class eight. His contention as stated by the learned judge below was " that the grading of the

license tax according to the amount of the gross sales is illegal because it is not uniform ; that all liquor sellers should be required to pay the same amount ; and that by making the amount of sales a basis, it is in effect an income tax. But this is not a taxing of the person of the liquor seller, but of his property estimated by the volume of the annual sales." This last sentence is the expression on which appellant bases his argument that the tax now in controversy is a tax upon property. But it is apparent that the learned judge there had in his mind no such distinction as that between the tax on property as such, and property as an incident of business measurable by the amount of sales. It had been held in Banger's Appeal, 109 Pa. 79, cited by the judge in connection with the language above quoted, that a tax on occupations graduated according to the amount earned by each individual, was an income tax not authorized by law. This was what the judge referred to and the distinction in his mind was that between a tax on the person of the licensee, as an occupation or income tax, and a tax directly or indirectly upon property. The language must be read in connection with the facts to which it was applied, and so read it has no bearing on the present question. The decision however is exactly in point in favor of the present judgment, for what it actually decides is that a tax upon vendors of merchandise graduated according to the amount of annual sales is not unconstitutional for want of uniformity.

The other case relied on by appellant, Williamsport v. Wenner, 172 Pa. 173, raised a very similar question. The city by ordinance had imposed a license tax on all persons " doing business," and after fixing a definite sum for each kind of a large number of specified occupations it grouped together " merchants of all kinds . . . . butchers . . . . produce or merchandise vendors,". etc., classified them by the amount of annual sales and graduated the tax accordingly. The court below in sustaining the tax used some expressions that it was a tax on property, but as in the other case, clearly with reference only to the argument made that it was a personal license or occupation tax and, therefore, under Banger's Appeal, 109 Pa. 79, not subject to variation in amount. This court affirmed the decision as already said in a per curiam opinion, and what it really de-

cided was that the grading of the tax on dealers according to the amount of sales did not make it void for want of uniformity.

This court, as thus appears, has not decided that a tax such as now before us is a tax upon property, requiring uniformity in the rate. On the contrary, though the question in its present aspect has never been directly discussed, it has in effect been twice decided in favor of the validity of the tax.

As already said, even regarding it as a tax upon property directly, it could be sustained as a classification according to the use and purposes for which the property is held. But an examination of the details of the provisions of the present act makes it clear that the tax, as held by the learned judge below, is upon the business of vending merchandise, and that the classification is based on the manner of sale, and within each class the tax is graduated according to the gross annual volume of business transacted. This is apparent from the fact that the amount of the tax over the small fixed license fee is determined in every case by the volume of business, measured in dollars, and the rate at which it is to be levied is according to the manner of sale. The act divides vendors of merchandise into four classes, retailers in general, wholesalers in general, retailers at an exchange or board of trade, wholesalers at an exchange or board of trade. For each of these classes a uniform rate is fixed per dollar of business transacted. Such a tax is "uniform upon the same class of subjects" within the requirements of the constitution.

It is not necessary at this late day to enter on a defense of classification. In reference to subjects of taxation it has always existed, and the power is explicitly recognized in the section of the constitution which requires uniformity. In Durach's Appeal, 62 Pa. 491, it was said by SHARSWOOD, J., certainly as strict a constructionist as ever sat on this bench, "In the legitimate exercise of the power of taxation persons and things always have been and may constitutionally be classified. No one has ever denied this proposition." In Com. v. Del. Div. Canal Co., 123 Pa. 594, 620, our late Brother CLARK said: "The new constitution does not withdraw the power of classification from the legislature. . . . The power to impose taxes for the support of the government, subject to the limitations of the constitution, still belongs to the legislature; the selection of the

subjects, their classification, and the method of collection are purely legislative matters." And in Seabolt v. Comrs. of Northumberland County, 187 Pa. 318, it is said, " Classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classification void though they may not consider it to be on a sound basis. The test is not wisdom but good faith in the classification."

The division of vendors into wholesale and retail is perhaps the most obvious and familiar that could be made. It is founded on a known or presumed difference in the percentage of profit to bulk of sales, and has been on our statute books for more than a century. It is equally clear that the subclassification of dealers at an exchange or board of trade is not based merely on location as complained, but on the mode of sale. Such dealers are not supposed in the ordinary course of their business to carry an actual stock of goods in a store or defined location, with its accompaniments of rent, clerk hire, expenses of delivery, etc., but to deal largely if not entirely on samples, orders, bills of lading, warehouse receipts, etc., by which title passes without actual handling of the goods. If such differences in the manner of transacting the business exist, they are a legitimate basis for classification, and whether they do in fact exist is a question for legislative determination. We are unable to see that the classification in the act before us violates the constitutional requirement of uniformity.

2. The further objection is made that the tax is not to be "levied and collected under a general law" as required by section 1 of article 9. This objection is founded on those sections of the act which provide for a difference in the number and mode of appointment of the appraisers in the counties generally and in cities of the first class. In the counties they are to be appointed annually by the county commissioners, while in cities of the first class they are to be appointed by the auditor general and the city treasurer jointly, are to be five in number, to hold office for three years, and not all to be of the same political party. Certain variations in the duties of the treasurers

in hearing appeals, etc., are involved in these differences in regard to appraisers. These differences however are all merely incidental to the purpose of the statute, to provide revenue. All the provisions relating to the tax itself, the classes of persons subject to it, and its amount in each case, the mode of assessment and the duties of assessors, in relation to it, and the right of ultimate appeal by the citizen to the court, are uniform and prescribed by a general law applicable alike over all the state. The sole variations are in the number and mode of appointment of the appraisers. The generality of the law is not destroyed by such slight differences in its machinery of application. In Com. v. Del. Div. Canal Co., 123 Pa. 594, already cited, the act of 1885 had classed loans, money at interest, etc., together at a uniform rate of taxation, and it was objected (see p. 616) that all other subjects are valued and taxed by the local assessors, while corporate loans, without being valued, are directed to be assessed by the treasurer of the corporation which issued them. But this court held that "a mere diversity in the methods of assessment and collection violates no rule of constitutional right, if when they are applied there is substantial uniformity in the result." There are counties of large population and business where the work of assessment is necessarily greater in amount and importance than in the average counties of the commonwealth. The legislature might have recognized the necessity for a somewhat different system of assessment in such cases and classified them accordingly. But it found a classification of cities already made, well suited to the requirements of the occasion and adopted it pro tanto for the purposes of the act. It was entirely competent to do so. The basis of classification of cities is entirely germane to such use. They are divided into classes for the purpose of legislation with reference to their municipal and governmental functions, and the highest of these is taxation, the power of taking the property of the citizen without his consent for purposes he may or may not approve. The city of Philadelphia, the only present city of the first class, has always both before and since the constitution of 1874 had its own special system of municipal taxation, and the state might well adopt a special system for the assessment and collection of its own tax from the same

population in the same territory without thereby destroying
either the uniformity of the tax or the generality of the law.

3. It is further objected that the act violates the prohibition
in section 7 of article 3 against local or special laws "regulating
the affairs of counties, cities," etc., or "prescribing the powers
and duties of officers in counties, cities," etc. What has already
been said in the discussion of the classification by the act,
practically disposes of this objection. The "affairs" which are
regulated are not the affairs of the city, but of the state. The
rights of the citizens are not made any different in cities from
those in counties. Both are assessed at the same rate in the same
classes by single assessors from whom there is an appeal, first
to the assessor with others so that he may not sit alone in judg-
ment on his previous action, and finally to the courts. The fact
that in one case the first appeal is to the assessor and the county
treasurer and in the other to the board of five assessors makes
no substantial variation in the citizen's rights any more than
the fact that his further appeal is to a court of common pleas
with a greater number of judges. In regard to prescribing
duties of officers in cities, that provision relates to the duties
of such officers in their municipal capacity. There is no pro-
hibition to the state to impose additional duties to itself on city
officers virtute officii. The state may appoint its own agents
to collect its own tax, even though such agent be also for
other purposes a municipal officer, and his duties as state agent
will not necessarily blend or become part of his duties as a city
officer. This was practically decided in Philadelphia v. Martin,
125 Pa. 583, where it was held that the compensation of the city
treasurer of Philadelphia in the collection of the state license
fees from vendors of merchandise, etc., was due to him as a
separate agent of the state and was not required to be paid by
him into the city treasury. In commenting on that case in
Schuylkill County v. Pepper, 182 Pa. 13, our Brother DEAN
stated the rule thus: "The state may by law appoint any county
officer its agent for the transaction of its business, and as such
state officer or agent he may be entitled to fees for such ser-
vices; but for the performance of any and every duty as a
county officer, the fees must be paid into the county treasury."
And I cannot close this branch of the subject better than by a
quotation from an opinion of an eminent jurist whose decisions

on constitutional questions during his long and honorable career on the bench derived additional weight from his previous distinguished service in the halls of congress during the most critical period in the history of the nation. In Bartley v. Patton, 19 Phila. 496; 46 Leg. Int. 168, on this exact point then arising under the similar act of 1887, THAYER, P. J., said; " The particular provision objected to relates to the subject of taxation, the appointment of mercantile appraisers, and the publication of the lists and classification prepared by them. The act enacts that the appraisers shall be appointed by the county commissioners, except in cities of the first class, in which they are to be appointed by the auditor general and the city treasurer. In cities of the first class five such appraisers are to be appointed, whereas in the other counties of the state only one is appointed for each county. . . . The truth is that this being a law relating to state taxation, it was perfectly competent for the legislature to provide for the appointment of one set of agents to attend to the levying and collection of this tax in one part of the state and another set of agents to attend to it in another part. Indeed, it appears to me that it would have been entirely competent for the legislature to do this by an enactment in direct terms, without resorting to the expedient of putting the provision which is objected to in the form of an enactment for cities of the first class, for the object of the law is not to prescribe the powers and duties of city, borough and county officers, but simply to designate what persons shall act as the agents of the state in the collection of the tax, and the fact that some of the agents selected are state officers, some county officers and some city officers, affords no pretext to say that the constitution is violated by an infraction of the provision already quoted. There is no such infraction. The legislature could appoint whatever agents it chose for this purpose, and the state would be in a sorry plight if it could not."

4. Another objection made is that the 10th section of the act providing that the rate of commissions, mileage, etc., shall remain the same as now fixed by existing law, offends against section 6 of article 3 of the constitution which requires all laws revived, amended or the provisions thereof extended or conferred shall be re-enacted at length. Section 10 was plainly put in merely ex majore cautela and has no practical effect. It must be read

as if it said this act shall not be held to repeal by implication any existing law relating to commissions, fees or mileage. No act can be rendered unconstitutional by a section which makes no change whatever in the law as it was before, and which might have been omitted without any effect whatever.

5. The last objection, evidently thrown in as a makeweight, is that the provisions of the act are an invasion of the individual liberty of the citizen, contravening the bill of rights of our own constitution, and the fourth, fifth and fourteenth amendments to the constitution of the United States. When these irrelevant and overworked generalities are thus called in, it may be safely assumed that the advocate has little confidence in his more definite and substantial arguments. The learned judge below said that "this objection seems to be somewhat belated," and he might truly have said that it was not only belated but exceedingly flimsy. All taxes and methods of collecting them are interferences with the natural man and his individual rights, but he must give up something of them when he comes into society under an orderly government. Universal experience has shown that the average citizen does not come forward voluntarily and make frank disclosure of his taxable property, and the state must be conceded authority and adequate means of discovering it in invitum. In Bells Gap R. R. Co. v. Penn., 134 U. S. 232, it was said by Mr. Justice BRADLEY: "The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, . . . . may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products. . . . All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or defini-

tion on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the states, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material, but it would render nugatory those discriminations which the best interests of society require, which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice, and which every state, in one form or another, deems it expedient to adopt."

After this explicit decision by the supreme authority on the subject, even the enthusiastic ingenuity of counsel might have considered the question as settled.     •

Judgments affirmed.