## Miller Chevrolet Company, Appellant, *v.* Pittsburgh.

Argued April 26, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Jerome C. Bachrach,* with him *Gregory Zatkovich,* for appellant.

*Regis C. Nairn,* Assistant City Solicitor, with him *Edmund W. Ridall, Jr.,* Assistant School Solicitor, *Niles Anderson,* School Solicitor, and *David Stahl,* City Solicitor, for Pittsburgh and School District, appellees.

OPINION BY MR. JUSTICE EAGEN, June 30, 1960:

Appellant is a franchised General Motors Dealer in new and used automobiles. As such, it is subject to the assessment by the City and School District of Pittsburgh of a mercantile tax of two mills and one mill, respectively, "on each dollar of the volume of the annual gross business transacted." Not having included in its computations of gross receipts the difference between the manufacturer's recommended list price, on the one hand, and alternately, the price at which the items were *actually* sold where no trade-in transaction was involved, or the total of the actual money received plus the value actually placed by it on the traded-in items when such were involved, on the other hand, appellant was duly notified that it owed additional mercantile license taxes for the years 1954 to 1958, inclusive, in the amounts of $5,334.70, as to the city, and $2,595.07, as to the School District, each sum including interest and penalties correctly computed. The notification was dated December 9, 1958. Appellant paid each of the amounts by checks dated December 12, 1958, and at that time, protested the deficiency assessments, penalties and interest. Following a hear-

ing conducted on the protest, the taxing authorities decided that there would be "no change in the audit." An action, in the form of a petition for appeal from assessment of additional mercantile taxes, was thereupon instituted in the court below.

The verity and accuracy of the material facts and figures alleged by appellant-petitioner at no time in the proceedings having been in dispute, the questions were presented and resolved below purely as issues of law. For simplification purposes, two hypothetical situations, having a controlling analogy to the true picture presented, were submitted and determined as decisive of the merits of the controversy. In essence, they were these: Question 1: Assume the manufacturer's recommended list price of a given automobile to be $3000. Assume a no trade-in deal. Assume customer buys the car for the actual price of $2,400. Is the mercantile tax, on these supposed facts, to be based on the $3000 figure or that of $2,400? The lower court, reversing the "no change" conclusion of the taxing authorities, held the tax to be assessable on the actual selling price of $2,400. No appeal from that order was taken and the City and School Board have presumably refunded $2,193.52 to the appellant as an over-assessment. Question 2: Assume the same manufacturer's recommended list price. Assume a trade-in deal. Assume the actual selling price of the new car to customer to be $2,400. Assume payment of $1600 in cash and a trade-in of a car actually evaluated by appellant and customer at $800. Is the mercantile tax, on *these* supposed facts, to be based on the recommended list price of $3000 *or* on the aggregate of the cash received by appellant and the actual value placed on the trade-in by the parties to the sale? The lower court, affirming the "no change" conclusion reached by the authorities on this aspect of the petition, held in effect the tax to be assessable on the

$3000 figure. The petitioner appeals to us, praying for a reversal of this determination. We hereby so order.

It is essential to an understanding of the merits of this case to bear in mind that appellees do not question the reality of the values placed by appellant on the cars it accepted as trade-ins. These figures are not challenged. How then can we assume the value of these cars to have been more than that agreed upon by the parties to the several transactions? Obviously, we cannot. No allegation of bad faith on appellant's part is of record and nothing in the record implies it.

It is difficult, nay impossible, to reconcile the conclusion of the lower court with its general discussion under the heading of "Findings of Fact," with respect to the second phase of the appeal then before it, namely, the tax treatment of trade-in transactions. Much of that discussion would seem consistent only with the determination for which appellant contended. Nowhere in the opinion of the lower court does there appear a substantial suggestion of cause for its different treatment of the two hypothetical questions presented as the basis for that court's determination. The court below acknowledges that appellee is engaged in an "effort to impose the tax on the advertised selling price." It says that "(w)hether the reduction in the actual money received for a new car squares with meticulous nicety with its concept of a trade discount *does not void the realistic fact—the taxpayer never received the total price first set in the advertisement, never actually received his initial asking price.*"[1] In this connection, we view with distress the conclusions there reached when we are unable to blend them with the following language of the trial court: "Unless the specific language

---

[1] Emphasis throughout, ours.

imposing the tax plainly indicates otherwise, a tax on gross receipts, while it does not permit deductions for expenses and services, means receipts in the ordinary layman's understanding of the phrase, *business actually done, increase actually received, earnings taken in.*" By what subtle route the court travelled from this declaration to its affirmance of the board's decision on the trade-in issue, we cannot say. It apparently placed some reliance upon this Court's decision of *Allegheny County Motor Company v. Pittsburgh,* 360 Pa. 407, 62 A. 2d 64 (1948). But nothing therein stated can be looked to as controlling or decisive of the question now before us. Indeed, appellant can obviously prevail here consistent with the pronouncements in that case by this Court of the meaning of "gross volume of business."

At the time of the decision by this Court of *Allegheny County Motor Company v. Pittsburgh,* supra, Article 6(a) of the regulations provided that "where the property traded in is subsequently sold by the vendor or dealer, the latter must include in his gross receipts the *entire selling price* from the sale of such property traded in." But, NOW includable "in his gross receipts (is) *the amount by which the resale price exceeds the trade-in allowance.*" It is admitted that to the extent that petitioner ever realized more on subsequent resales of used cars taken in trade than the inventory values assigned to such cars at the time of their acquisition, appellant, for all years involved, had duly reported and paid mercantile taxes on such excess. In short, and returning to the submitted, mutually acceptable hypothetical question, if the traded-in car, earlier evaluated at $800, were later sold for $1000, appellant, admittedly, at all times paid an additional mercantile tax based on the $200 difference.

When the taxing authorities admit that the values assigned to the trade-ins at the time of the various transactions were true and correct, and yet contend that the tax base should be on a much higher, ficticious figure never adopted by the parties to the sales, we believe them to be in an anomalous position. We are, most assuredly, unconvinced by the arguments advanced in support of their contention. We see no reason why (and a careful analysis of the regulations of the taxing agencies will yield none) actual value should not be the criterion. To us, it seems unnecessary to quibble over whether or not appellant's system of bookkeeping was dictated by its manufacturer. We believe that issue to be immaterial. Taxes traditionally have been aimed at the realities of given transactions. Indeed, we feel that the express provision that "the amount by which the resale price exceeds the trade-in allowance" shall be includable as gross receipts is, itself, to all practical purposes, inconsistent with the theory that "overallowances" or "discounts" in situations like the present are necessarily to be included as "gross receipts."

Finally, our study of the applicable mercantile license tax regulations impels us to the conclusion that a correct interpretation of them is entirely consonant with the determination we have reached.

Accordingly, the order of the lower court is reversed.