398 A.2d 997

HAMS EXPRESS, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, BOARD OF FINANCE
AND REVENUE TREASURY DEPARTMENT, Appellee.

Supreme Court of Pennsylvania.

Argued Jan. 9, 1979.

Decided March 16, 1979.

Frederick C. Sturm, III, Philadelphia, McNees, Wallace & Nurick, John S. Oyler, Harrisburg, for appellant.

R. Scott Shearer, Robert P. Coyne, Deputy Attys. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

This is an appeal[1] from the Commonwealth Court's affirmance of the Board of Finance and Revenue's order denying appellant's petitions for refund of an alleged Gross Receipts Tax[2] overpayment. *Hams Express, Inc. v. Commonwealth Board of Finance and Revenue,* 26 Pa.Cmwlth. 448, 363 A.2d 1340 (1976). The controlling issue is whether Hams Express, Inc., appellant, is entitled to claim as a credit against the Gross Receipts Tax the license and registration fees for a number of motor vehicles[3] leased by appellant from a leasing corporation. The Commonwealth Court held that appellant was not so entitled. *Id.* For the reasons discussed herein, we disagree and reverse the order of the Commonwealth Court.

The pertinent facts, as stipulated by the parties, are as follows: Hams Express is a company engaged in the intra-

1. This Court's jurisdiction is based upon Section 203 of the Appellate Court Jurisdiction Act of 1970. 17 P.S. § 211.203 (Supp.1978–79), *superseded by* 42 Pa.C.S.A. § 723(b) (1978 Pamphlet, Part I).

2. 72 P.S. §§ 2183–2191 (1949 & Supp.1978–79).

3. Such a credit is provided for by Section 3 of the Gross Receipts Tax Act of 1931, *as amended,* 72 P.S. § 2185 (Supp.1978–79). For the relevant provision of this section, *see* text *infra.*

state and interstate business of carrying property for hire via motor vehicles. As such, Hams is subject to the Gross Receipts Tax, 72 P.S. §§ 2183–2191 (1949 & Supp.1978–79), the rate of which is levied upon that portion of Ham's gross receipts as is represented by the ratio that the mileage on routes operated by the company within the Commonwealth bears to the total mileage on all routes, during the relevant period. *Id.* § 2185 (Supp.1978–79). For the taxable periods ending December 31, 1971 and December 31, 1972, Hams paid gross receipts taxes of six thousand sixty-five dollars sixty-four cents ($6,065.64) and six thousand six hundred forty-five dollars twenty-nine cents ($6,645.29), respectively. During each taxable period, appellant sub-leased motor vehicles from a company which in turn had leased the same vehicles from a corporate lessor.[4] Although a different corporate lessor was a party to the lease agreements in effect for each of the two taxable periods in question, the relevant lease terms are essentially identical. Therefore, for purposes of brevity, we will set forth the pertinent terms of the lease agreements in effect during the taxable period ending December 31, 1971. On May 8, 1968, Berman Leasing Co. (Berman) leased twenty-seven motor vehicles to Blue Bird Food Products Co. (Blue Bird). On April 24, 1971, Blue Bird sub-leased the same vehicles to appellant Hams. The lease agreement between Berman and Blue Bird states:

> Berman hereby agrees to furnish, supply and do the following, at its *sole cost and expense, except as hereinafter modified,* for the purpose of maintaining the equipment units in good working order and for proper operation: (Emphasis added)

> . . . . .

> (e) License Tags: to pay all license tag fees for the State of Pennsylvania for each equipment unit.

The sub-lease agreement between Blue Bird and Hams has essentially the same provision:

4. In fact, during the taxable period ending December 31, 1972, Hams was the assignee of a motor vehicle lease between Luby Leasing, Inc., the lessor, and Blue Bird Food Products Co., the lessee. Hams was the assignee of Blue Bird's interest as a lessee of the vehicles.

Blue Bird hereby agrees to cause to be furnished, supplied and have done the following, *at no cost and expense to Hams except as hereinafter modified,* for the purpose of maintaining the equipment units in good working order and for proper operation: (Emphasis added).

. . . . .

(d) License Tags: To pay all license tag fees for the State of Pennsylvania, for each equipment unit.

The "modifications" provide that if there is an increase in license tag fees above those in effect at time of agreement, then the lessee (either Blue Bird or Hams) shall pay the amount of the increase; if the fees decrease, then the lessee (either Blue Bird or Hams) shall receive a credit against the rental charge for the amount of the decrease.[5]

It is stipulated that Berman remitted license and registration fees to the Commonwealth in the amount of fourteen thousand four hundred fifty-five dollars ($14,455.00). It is further stipulated that this cost to Berman was included in the rental charge paid to Berman by Blue Bird; under the terms of the sub-lease between Blue Bird and Hams, Hams reimbursed Blue Bird for the rental charge that Blue Bird paid to Berman.[6]

The dispute in the instant case centers upon the interpretation and application of the following section of the Gross Receipts Tax Act, which allows a tax credit to subject companies for amounts paid to the Commonwealth for motor vehicle registration fees:

[W]here any such company *has paid to the Department of Revenue a registration fee or fees,* as provided for by the laws of this Commonwealth, upon any motor vehicle

---

5. There were no such increases or decreases in these fees during the term of the agreements.

6. The corporate lessor for the taxable period ending December 31, 1972, paid license and registration fees in the amount of fourteen thousand ninety-three dollars ($14,093.00) to the Commonwealth. This cost was similarly passed along to Hams by Blue Bird under the terms of the assignment agreement between Blue Bird and Hams. *See* note 4 *supra.*

or motor vehicles used in the business of carrying passengers or property for hire over the highways of this Commonwealth, it shall receive a credit in each settlement for gross receipts tax made hereunder to the extent of the total amount of the registration fee or fees paid for the calendar year of which the period covered by the settlement was a part. 72 P.S. § 2185 (Supp.1978–79) (Emphasis added).

In essence, the Commonwealth argues that the statute requires companies seeking the benefit of the tax credit to pay *directly* to the Commonwealth the motor vehicle registration fees. From this proposition, the Commonwealth concludes that because the corporate lessors, Berman and Luby (*see* note 6 *supra*), not Hams, actually remitted the fees to the Commonwealth for the periods in question, Hams was not entitled to the credit and, therefore, is not now entitled to a refund for overpayment of taxes.[7] The Commonwealth Court accepted this analysis. *See Hams Express, Inc. v. Commonwealth Bd. of Finance and Revenue, supra* 26 Pa. Cmwlth. at 450, 363 A.2d at 1341.

■ In response, appellant argues that under the lease and sublease agreements it is clear that the cost of vehicle registration is passed along to and ultimately borne by appellant. Primarily for that reason, appellant concludes that it should be deemed to have "paid" the registration fees within the meaning of the statute and, accordingly, should be given the benefit of the tax credit. We agree.

■ We note initially that under the leasing arrangements in the instant case, there is no doubt that appellant does pay indirectly the cost of registration fees.[8] The lease

7. It is stipulated that if Hams were given credit for the registration fees, such credit would totally offset Hams' tax liability for the relevant taxable periods.

8. The Commonwealth Court conceded this point. *Hams v. Commonwealth Bd. of Finance and Revenue,* 26 Pa.Cmwlth. 448, 450, 363 A.2d 1340, 1341 (1976).

provisions governing increases or decreases in the fees subsequent to the execution dates of the agreements indicate that the prevailing registration fees represented a portion of the rental charge paid by appellant. *See* text accompanying note 5 *supra*. In pressing its argument that the statute requires actual direct payment of the fees by the taxpayer who seeks the tax credit, the Commonwealth asserts that because in this case the grant of the credit will negate appellant's tax liability, the tax credit is in the nature of an exemption and that therefore the statutory language creating the credit must be strictly construed. Although it is true that statutes exempting persons and property from taxation are to be strictly construed, 1 Pa.C.S.A. § 1928(b)(5) (Supp.1978–79), a section of a tax statute providing for a tax credit is not transformed into an exemption provision simply because in a given case the effect of the tax credit is to negate tax liability.

Such an argument inverts the normal analytical process, whereby a rule of construction is applied to the tax statute in question in order to determine the extent of tax liability, if any. As often as this Court has had occasion to state that taxing statutes are to be strictly construed, *see, e. g., Alan Wood Steel Co. v. Phila. Sch. Dist.,* 425 Pa. 455, 463, 229 A.2d 881, 885 (1967), it has just as often noted that reasonable doubts as to a taxing statute's interpretation should be resolved in favor of the taxpayer. *See, e. g., id.; Dan Allen Chevrolet Co. v. Pittsburgh,* 414 Pa. 429, 200 A.2d 388 (1964). It would be particularly inappropriate to strain to justify a rule of strict construction where its application would result in a wooden interpretation of the language that completely ignores the statutory scheme sought to be advanced.

This Court has stated that "taxes traditionally have been aimed at the realities of given transactions". *Miller Chevrolet Co. v. Pittsburgh,* 400 Pa. 648, 653, 162 A.2d 351, 354 (1960). Therefore, it is appropriate that in construing a tax statute we look to the realities of the transactions from

which the construction problem arises. In so viewing the instant case, we note that neither of the corporate lessors who actually remitted the fees engage in the business of carrying passengers or property for hire. Therefore, neither lessor is subject to the Gross Receipts Tax, nor is either one entitled to the tax credit for the amount of the remittances. *See* 72 P.S. §§ 2183, 2185 (Supp.1978–79). Thus, the dispute is not over which of two or more taxpayers can claim the tax credit. The dispute is whether a tax credit should be allowed at all for fees which unquestionably were paid to the Commonwealth. As appellant correctly notes, to deny it the tax credit results in a total loss of the credit.[9]

To construe the statute as urged by the Commonwealth, we would need to ignore what we find to be the implied purpose of the tax credit provision in Section 2185.

The Gross Receipts Tax is levied based upon a company's use of the Commonwealth highways, *id.* § 2184, and revenue generated by the tax paid by appellant must be credited to the Motor License Fund. *Id.* § 2191. Similarly, the revenue created by the vehicle registration fees indirectly paid by the appellant must be deposited in the same fund. 75 Pa.C.S.A. § 1904 (1977). The purpose of these fees and the Motor License Fund is to provide for the construction, maintenance, repair and safety of the Commonwealth's highways. Pa.Const. art. 8, § 11; 71 P.S. § 511.2 (Supp.1978–79); 72 P.S. § 3562(a) (1968) (Repealed 1970). Since the vehicle registration fees and the Gross Receipts Tax are ultimately used for the same purpose, it is logical to infer that the legislature viewed payment of registration fees as being in the nature of a partial pre-payment of Gross Receipts Tax and, for that reason, allowed a tax credit for those fees. Under this analysis, the rationale for the Section 2185 tax

**9.** We think this distinction renders inapposite the Commonwealth's analogy to the lessee of a house, who is disallowed a federal income tax deduction for that portion of the rent representing property taxes paid by the owner-lessor. In such a situation, the owner-lessor takes the tax deduction.

credit was the prevention of double or over-taxation. Because appellant clearly bore the burden of the registration fees, to deny appellant the credit would frustrate the purpose for which the tax credit was established. Therefore, we hold that in the instant case appellant has "paid" the fees within the meaning of Section 2185.[10]

Accordingly, we reverse the Order of the Commonwealth Court and remand to the Board of Finance and Revenue with the direction that appellant be given the credit for the fees remitted by the lessors.

O'BRIEN, J., did not participate in the consideration or decision of the case.

LARSEN, J., filed a dissenting opinion in which EAGEN, C. J., joined.

LARSEN, Justice, dissenting.

I dissent and adopt the reasoning of the Commonwealth Court's Opinion as authored by the Honorable Judge Roy Wilkinson, Jr. That case may be found at *Hams Express, Inc. v. Commonwealth Board of Finance and Revenue*, 26 Pa.Cmwlth. 448, 363 A.2d 1340 (1976).

EAGEN, C. J., joins in this dissenting opinion.

**10.** Because we base our holding on statutory grounds, we need not reach the constitutional issues raised by appellant.