596 A.2d 784

**AMERICAN TRUCKING ASSOCIATIONS, INC., et al., Appellees,**

v.

**Eileen McNULTY,[1] Acting Secretary of the Department of Revenue, et al., Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 28, 1988.

Resubmitted Feb. 13, 1991.

Decided Aug. 14, 1991.

---

1. Pursuant to Pa.R.A.P. 502(c), the successors to the public officers named in the original caption have been substituted as parties.

Richard L. Berkman, Arthur S. Gabinet, Dechert, Price & Rhoads, Andrew L. Frey, Kenneth S. Geller, Mayer, Brown & Platt, Robert Digges, Jr., Daniel R. Barney, ATA Litigation Center, for appellants at No. 19 and appellees at Nos. 11 & 12.

Alvin J. Ivers, for appellants at No. 102.

John G. Knorr, III, Andrew S. Gordon, Allen C. Warshaw, Atty. Gen.'s Office, for all appellants and appellees at No. 19.

Seymour Kurland, City Sol., Christine T. Bak, Chief Asst. City Sol., for appellees at No. 102.

Frank A. Sinon, Sherill T. Moyer, K. Michael O'Connell, for owner-operators Independent Drivers Ass'n of America, Inc., and William Harwell at Nos. 11, 12 & 19.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

ZAPPALA, Justice.

This matter is now before us on remand from the United States Supreme Court "for further proceedings not inconsistent with" its opinion in *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). In that opinion, the Court reversed the judgment of this Court, 510 Pa. 430, 509 A.2d 838 (1986), and held that certain fees or taxes imposed by the state on interstate truckers violated the Commerce Clause, U.S. Const., Art. I, § 8. The Commonwealth had asked the Court in the event of an adverse decision to remand the case to consider whether the ruling should be applied retroactively, and the Court agreed "that having decided the constitutional issue presented ..., [it] should remand for further proceedings." 483 U.S. at 297–98, 107 S.Ct. at 2847.

Shortly after we heard argument on remand, the U.S. Supreme Court granted certiorari in *American Trucking*

*Associations, Inc. v. Smith,* 488 U.S. 954, 109 S.Ct. 389, 102 L.Ed.2d 378 (1988), on the question of whether *Scheiner* should be applied retroactively. In that case, the judgment of the Supreme Court of Arkansas, rejecting a similar constitutional challenge to highway use taxes imposed by the state, had been vacated and the case remanded for further consideration in light of *Scheiner,* 483 U.S. 1014, 107 S.Ct. 3252, 97 L.Ed.2d 752 (1988) (*sub nom. American Trucking Associations, Inc. v. Gray* ), and on remand the Arkansas Court had determined that *Scheiner* was not to be applied retroactively. 295 Ark. 43, 746 S.W.2d 377 (1988). Believing that the decision of the U.S. Supreme Court on the retroactivity of *Scheiner* would be significant to, if not controlling of, our disposition of this case, we held our decision pending the outcome of the Arkansas case. That case, held over from the 1988 Term of the Court and reargued on December 6, 1989, was decided on June 4, 1990. 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148.

### A.

At the outset, we address the taxpayers' contention that the Supreme Court's decision in *Smith* is entirely irrelevant to resolution of their claims for refunds in this case. According to the taxpayers, either Pennsylvania statutory law or stipulations between the parties, or both, provide an independent basis for requiring the refund of money paid under the enactments declared unconstitutional in *Scheiner.*

The taxpayers argue that their entitlement to refunds is established by Sections 503 and 1108 of the Fiscal Code, Act of April 9, 1929, P.L. 343, art. V, § 503, as amended, and art. XI, § 1108, added July 15, 1935, P.L. 1029, § 1, as amended, 72 P.S. §§ 503 and 1108. Section 503 provides

The Board of Finance and Revenue shall have the power, and its duty shall be, (a) ... to hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonuses, or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and, upon the allowance of any such

petition, to refund such taxes, license fees, penalties, fines, bonuses, or other moneys....[2]

Section 1108 provides

(a) Any person ... who is required to make to the Department of Revenue a return or report upon the basis of which any tax, or other charge is or will be settled, determined or assessed, shall have the right at any time, to pay to the Department of Revenue all or any part of the amount of any tax due and payable for the purpose of stopping the running of further interest thereon, without prejudice to his right to present and prosecute a petition ... or an appeal to a court of competent jurisdiction....

\* \* \* \* \* \*

(b)(1) Whenever the amount due on a settlement, assessment, determination or decision by the department ... or court of competent jurisdiction is less than the amount paid to the Department of Revenue on account thereof ... the Department of Revenue shall enter a credit in the amount of such difference to the account of such person ...

\* \* \* \* \* \*

(4) If all obligations due the Commonwealth have been fully paid, any credit shall be refunded in cash by the Department of Revenue upon application....

The taxpayers cite *Hotel Casey Co. v. Ross*, 343 Pa. 573, 582, 23 A.2d 737, 741–42 (1942), where we stated

---

**2.** At the outset of this litigation, Section 503 contained an exception, subsection (a)(4), to the two year limitation period for petitioning for refund "[w]hen any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. In such case, the petition to the board may be filed either prior or subsequent to such final judgment but must be filed within five years of the payment of which a refund is requested or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever last expires." This exception was repealed by the Act of July 1, 1985, P.L. 78, No. 29, § 15, "with respect to taxes, and other moneys due, paid, settled, assessed, determined or appraised on or after January 1, 1985."

While the Board of Finance and Revenue is authorized to decide whether a tax or money has been paid to the Commonwealth to which it was not "rightfully or equitably entitled", or more specifically as here, may find whether a tax or money has been paid under an interpretation of law subsequently held to be erroneous by a court of final jurisdiction, *if such facts are found in favor of the taxpayer the duty to refund or credit is mandatory.* (Emphasis added.)

The taxpayers also rely on stipulations entered into by the parties with respect to the marker fees and the axle taxes for each year since the inception of this lawsuit. Those stipulations were agreed to in exchange for the withdrawal of the taxpayers' Motions for Special Injunctions seeking to have the funds deposited in escrow accounts. The relevant provisions of the stipulation in No. 11 M.D. Appeal Docket, the marker fee case, are as follows, although the stipulations in No. 12 regarding the axle taxes paid each year are virtually identical.

1. [The Commonwealth parties] agree that, if [the taxpayers] prevail upon the merits of their Petition for Review, pursuant to 72 P.S. § 503, all affected motor carriers will be entitled to receive a refund of payments for identification markers for the year beginning April 1, 1982. Further, [the Commonwealth parties] agree that the motor carriers will receive a refund of such payments under the terms set forth below.

2. Within ninety (90) days after a final decision on the merits in which Section 2102 shall have been declared unconstitutional or its enforcement enjoined and all appeals have been exhausted or abandoned, [the Commonwealth parties] shall refund all payments for identification markers for the year beginning April 1, 1982....

3. [The Commonwealth parties] agree that, in the event refunds are due, they will identify and transmit the correct amount of refund to each affected motor carrier. [They] further agree that no affected motor carrier will be required to proceed before the Board of Finance and

Revenue or otherwise come forward with any type of proof in order to be entitled to such refund.

\* \* \* \* \* \*

7. This Stipulation relates solely to a procedure for refunds if [the taxpayers] ultimately prevail on their claims and neither [party] shall, by virtue of having entered this Stipulation, be deemed to have waived any claim, defense or position regarding the merits of this action.

■ The taxpayers maintain that because they paid the axle taxes and marker fees each year, promptly filed challenges, and the taxes and fees were held unconstitutional by the United States Supreme Court, the Department of Revenue, through the Board of Finance and Review, has a mandatory duty to make refunds in accordance with the statutes and stipulations.

The deficiency in this argument is that it fails to perceive the effect of a declaration that a ruling is to be applied purely prospectively. Under a ruling that *Scheiner* is to be applied prospectively, it is as though the taxes collected prior to the date of the *Scheiner* decision were not unconstitutional. This is the very meaning of prospective application; the holding of unconstitutionality applies *from the date of decision*, and not before. A decision on the retroactive or prospective effect of *Scheiner* is thus indispensable to determining whether the statutes or the stipulations require that refunds be made. A ruling of pure prospectivity would be a determination that the Commonwealth was "rightfully and equitably entitled" to the taxes paid prior to the date of the Supreme Court's decision in *Scheiner*, precluding a claim for refunds under Section 503, and the stipulations, which are declared to "relate solely to a *procedure* for refunds in the event [the taxpayers] prevail on the merits of their claims," require refunds only "after a final decision on the merits in which [the statutes] shall have been declared unconstitutional ... *and all appeals have been exhausted or abandoned....*" (Emphasis added.) The retroactive application or not of the holding of unconsti-

tutionality is unquestionably a part of the decision on the merits, and inasmuch as we presently consider this matter on remand from the U.S. Supreme Court, it cannot be said that there has been a final decision on the merits and all appeals have been exhausted.

## B.

In *Smith*, a plurality of the U.S. Supreme Court held, as a matter of federal law, that the Court's decision in *Scheiner* "does not apply to HUE taxation [Arkansas's equivalent of the taxes invalidated in *Scheiner*] for highway use prior to June 23, 1987, for the HUE tax year ending June 30, 1987." 496 U.S. at 183, 110 S.Ct. at 2334. Applying the three factor test of *Chevron Oil v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the plurality concluded that, 1) *Scheiner* obviously established a new principle of law by overruling clear past precedent; 2) the purpose of the Commerce Clause, creating an area of trade free from interference by the states, does not require retroactive application, while prospective application would accommodate the states' legitimate interest in taxing interstate commerce in a manner consistent with existing precedent; and 3) the equities fall in favor of not applying *Scheiner* retroactively, to avoid the hardship and potentially disruptive consequences of unsettling actions taken by state legislatures, courts, and tax collection authorities in reliance on established precedents, whose overruling could not be foreseen. 496 U.S. at 179–183, 110 S.Ct. at 2331–33.

Justice Scalia concurred in the judgment, although he did not accept the plurality's reasoning. In his view, "prospective decision making is incompatible with the judicial role, which is to say what the law is, not to prescribe what it shall be." 496 U.S. at 201, 110 S.Ct. at 2343. Applying a Blackstonian approach, with the Constitution as the source of the law, he stated

> To hold a governmental act to be unconstitutional is not to announce that *we* forbid it, but that the *Constitution* forbids it; and when, as in this case, the constitutionality

of a state statute is placed in issue, the question is not whether some decision of ours "applies" in the way that a law applies; the question is whether the Constitution, as interpreted in that decision invalidates the statute. Since the Constitution does not change from year to year,; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense. Either enforcement of the statute at issue in *Scheiner* (which occurred before our decision there) was unconstitutional, or it was not; if it was, then so is enforcement of all identical statutes in other States, whether occurring before or after our decision; and if it was not, then *Scheiner* was wrong, and the issue of whether to "apply" that decision needs no further attention.

*Id.* (Emphasis in original).[3]

Nevertheless, Justice Scalia, who had dissented in *Scheiner*, was able to agree that the pre-*Scheiner* taxes in Arkansas were not unconstitutional. He did so by reiterating in summary form his opinion that the negative Commerce Clause jurisprudence used to invalidate the taxes in *Scheiner* is wrong. Although stare decisis would ordinarily cause him to suppress his disagreement with the majority and apply the rule established by the Court to later cases, it would turn the doctrine against its very purpose to follow a precedent with which one disagreed where the result would upset settled expectations, here the reliance on the cases overruled in *Scheiner*. Finding the doctrine of stare decisis flexible, unlike the requirement of retroactive judicial deci-

3. *Contra, Commonwealth v. Geschwendt,* 500 Pa. 120, 132, 454 A.2d 991, 997 (1982) ("Once we fully appreciate the unsoundness of the declaratory theory of Blackstone, and accept that wrongly decided cases were nonetheless existing judicial facts until overruled, the focus of the question of retrospective application is placed in proper focus.") (Footnote omitted.); *Lemon v. Kurtzman,* 411 U.S. 192, 199, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1971) (*Lemon II*) ("... even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity.")

sion making inherent in his understanding of the judicial function, Justice Scalia determined to maintain the view expressed in his Dissenting Opinion in *Scheiner*, that taxes of this type are not unconstitutional.

### C.

██ As noted in Part A above, the effect of holding *Scheiner* to be prospective only is to establish that the tax declared unconstitutional therein had not been unconstitutional until the Court so ruled. "If Arkansas had collected HUE-like taxes for highway use occurring before the required tax payment date, a prospective decision of this Court that such taxes were unconstitutional would not preclude the State from collecting, after the date of that decision, taxes for highway use that occurred before the decision was announced.... Because we hold *Scheiner* to apply only prospectively, *flat highway taxation was permissible for highway use that occurred before the date of our decision but not after."* *Smith*, 496 U.S. at 187, 110 S.Ct. at 2336. (Emphasis added.)

Even after *Smith*, the question remains for our decision whether *Scheiner* is to be given *purely* prospective application, that is, whether it is limited entirely to future cases, denying the benefit even to the parties in this case, in which the principle was first announced. See *Commonwealth v. Geschwendt*, 500 Pa. 120, 125–26, 454 A.2d 991, 994 (1982), and cases cited therein. The plurality in *Smith* recognized the possibility of such a ruling when, responding to the suggestion of the dissenting Justices that the decision treated the Arkansas taxpayers less favorably than the taxpayers in *Scheiner*, they wrote that the decision in *Scheiner* "did not guarantee the taxpayers that the state court would retroactively apply the Court's decision or provide any particular relief. On remand of *Scheiner*, the Pennsylvania Supreme Court was free to consider the issue of retroactivity just as the Arkansas state court did in this case." 496

U.S. at 189, 110 S.Ct. at 2337.[4]

The taxpayers argue that applying *Scheiner* purely prospectively, denying them refunds, would have the effect of discouraging litigants from seeking the overruling of existing precedent. We have noted the force of this argument before. In *Commonwealth v. Geschwendt*, it was observed that

> There appears to be little support for a rule that would limit changes in state law only to future litigants and deny its benefits to the party in the proceeding in which the change is first announced. The concern with such a position is that it would stifle the initiative which is essential to a progressive, dynamic development of a system of justice.

500 Pa. at 128, 454 A.2d at 995–96. This observation, however, was directed particularly to the criminal law area, where the appeal is brought by an "individual defendant who is seeking relief for what is perceived by him to be a personal wrong or injustice [whose] concern is not the future of the law but rather its present application to him." *Id.* We distinguished the civil law area, where "the re-

---

**4.** Justice Scalia's jurisprudence, however, would apparently prevent him from acceding to a purely prospective application of *Scheiner*. Referring to the inevitable upsetting of expectations resulting from the inherent instability of the Court's "negative Commerce Clause jurisprudence," he observed that

> [m]y fellow dissenters in *Scheiner* seek to avoid this consequence in the present case—or, *more precisely, seek to avoid extending this consequence beyond the unfortunate State before the Court in Scheiner,* to all other States that had similar laws—by embracing a rule of prospective decision making. There is some appeal to that approach in the "negative" Commerce Clause field: If we are making essentially legislative judgments, why not make them in legislative fashion, i.e., prospectively *(subject, of course, to the limitation of the Case or Controversy requirement of Article III, § 2, cl. 1, which surely requires retroactivity with respect to the parties immediately before the Court* )? I decline to adopt that solution because, as I have discussed above, such a mode of action is fundamentally beyond judicial power—and although "negative" Commerce Clause decision making is as well, two wrongs do not make a right.

*Smith,* at 203–204, 110 S.Ct. at 2344–45. (Emphasis added.) *See also, James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Scalia, J., concurring).

sources are available ..., particularly in commercial matters, to institute and pursue a matter to establish new law without expectation of benefit in that lawsuit." *Id.* In cases such as this, moreover, there is always an incentive, in the avoidance of liability for payment of taxes or fees in the future, to challenge the validity of a statute.

This Court has, albeit on rare occasions, determined that it would be inequitable to apply a change in the law even to benefit the party who successfully argued for the change. *Incollingo v. Ewing,* 444 Pa. 299, 282 A.2d 206 (1971); *In re Catherwood Trust,* 405 Pa. 61, 173 A.2d 86 (1961). The United States Supreme Court has also held that certain of its decisions are to be applied purely prospectively, see, e.g., *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1971) (*Lemon II*), as have courts in other states, see, e.g., *National Can Corp. v. Department of Revenue,* 109 Wash.2d 878, 749 P.2d 1286, cert. denied and appeal dismissed, 486 U.S. 1040, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988); *Salorio v. Glaser,* 93 N.J. 447, 461 A.2d 1100, cert. denied, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). *National Can Corp. v. Department of Revenue* is particularly significant. In that case, the Washington Supreme Court applied purely prospectively the U.S. Supreme Court's decision in *Tyler Pipe Industries, Inc. v. Washington State Department of Revenue,* 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987). *Tyler Pipe,* decided the same day as *Scheiner,* indeed cited in the remand mandate of the *Scheiner* opinion, had held that a Washington tax discriminated against interstate commerce in violation of the Commerce Clause.

█ In deciding between prospective application of a decision, whereby the change is applied to future litigants but retrospectively only to the parties at bar, and purely prospective application, under which the change is applied entirely in the future even as to the parties to the case in which the change is announced, the factors of *Chevron Oil*

*v. Huson* remain determinative, with greater importance being assigned to the third factor, weighing the equities. Undeniably, the General Assembly was justified in relying on the *Aero Mayflower* line of cases in considering the statutes enacted here to be constitutional. As between Pennsylvania and Arkansas, there is no difference in this regard, and the plurality's opinion in *Smith* amply demonstrates "the inequity of unsettling actions taken in reliance on those precedents." 496 U.S. at 182, 110 S.Ct. at 2333-35. Indeed, after *Smith*, an additional inequity would arise against Pennsylvania if the Commonwealth were required to make refunds of payments made before June 23, 1987, since the Court would declare similar taxes collected in any other jurisdiction to have been constitutionally collected. Additionally, we note that the moneys collected have been spent for their designated purpose, improvement of the Pennsylvania road system, from which the taxpayers have derived a not insubstantial benefit that could not be recouped by the Commonwealth.

■ Upon full review of the briefs, arguments, and all post-submission communications of both parties, and weighing of the equities in this case, we conclude that pure prospective application of the rule in *Scheiner* from the date of the decision in that case, June 23, 1987, is appropriate. The claims for refunds prior to that date are denied.[5]

5. Included in the appeal to the United States Supreme Court, and the remand from that Court, was No. 19 M.D. Appeal Docket 1985. In that case, the taxpayers had advanced the same legal argument as they had made in No. 11 M.D. Appeal Docket 1985 in seeking refunds of marker fees paid between August 18, 1980 and March 31, 1982, the period prior to the time covered by the action at No. 11. The Commonwealth Court had dismissed the refund action for lack of jurisdiction since the taxpayers had failed to avail themselves of the statutory remedy for obtaining refunds. We did not address the correctness of this ruling because of our determination in No. 11 that the statute was not unconstitutional and therefore the taxpayers were not entitled to refunds in any event.

Following the remand order from the United States Supreme Court, the taxpayers have made no further reference to the action at No. 19. Their Application for Relief Requiring Refunds of Taxes Declared Unconstitutional by the United States Supreme Court is docketed only to Nos. 11 and 12. Accordingly, we consider the appeal at No. 19 to

The taxpayers argue in their second post-argument submission that *"Smith* squarely requires a refund of taxes paid for the post-*Scheiner* portion of the 1987–88 tax year." The Commonwealth responds that such refunds are not required because the right that was "purchased" by payment of the axle tax, unlimited use of the state's highways, was provided beginning April 1, 1987, three months before *Scheiner* was decided, when collection of the tax was constitutional.

■ In Part II, B, the *Smith* plurality opinion required refunds of taxes for the tax year beginning July 1, 1987, whether paid before or after *Scheiner* was decided. "Because we hold *Scheiner* to apply only prospectively, flat highway taxation was permissible *for highway use* that occurred before the date of our decision but not after." 496 U.S. at 187, 110 S.Ct. at 2336. (Emphasis added.) "[T]he critical event for prospectivity is 'the occurrence of the underlying transaction, and not the payment of money therefor....'" *Id.*

The Commonwealth's argument sets up *the privilege* of unlimited highway use as the taxed transaction, and concludes that because the privilege was granted, and exercised, prior to *Scheiner*, the tax was not unconstitutionally collected. This argument clearly runs counter to the reasoning of the *Smith* plurality, which established the *highway use* as the taxed transaction, assessing the constitutionality of the tax by whether the use occurred before or after *Scheiner* was decided. Although it is impossible to determine with any degree of precision what percentage of highway use occurred between April 1, 1987, and June 23, 1987, and what percentage occurred after, we think it appropriate to pro-rate the payment according to the relation that the period for which such taxation was allowable bears to the period for which the payment was actually made. Thus a refund of 77% of the axle tax payments

have been abandoned. Even if we were to consider the matter, however, our decision herein as to No. 11 that no refunds are due would preclude the relief sought in No. 19 as well.

made for the tax year April 1, 1987—March 31, 1988, is required.

■ After this case was remanded by the United States Supreme Court, an Application for Extraordinary Relief was filed by the Owner–Operators Independent Drivers Association of America, Inc. (the "Association") and William Hartwell. In this Application, Hartwell claims to be, and the Association claims to represent, a subgroup of the class certified in this action by the Commonwealth Court, whose interests are not fully protected by the Stipulations regarding the procedure for refunds. The Applicants seek an order certifying a subclass of owner-operators, whom they seek to represent, for purposes of facilitating the equitable distribution of any refunds ordered.

The Applicants allege that independent owners hire out their vehicles, for use in interstate transportation, to regulated or private carriers. They further allege that under prevailing industry practice, although the owner-operators were required to pay all taxes and fees, the carriers would complete the applications and tender the appropriate amount for taxes to the Department of Revenue, which would supply the markers or decals to the carriers, which would in turn distribute them to the independent owner-operators. Under the lease agreements, the amount of the tax would then be deducted from the owner-operators' revenue settlements with the carriers. Thus, although the owner-operators in fact paid the taxes, this fact is not reflected in the records of the Department of Revenue. Since the Stipulations call for distribution of refunds according to the records maintained by the Department, the owner-operators fear that any refunds ordered pursuant to the Stipulations would not be passed on to those who actually paid the taxes.

In another circumstance, this Court ruled that a party required to bear the cost of a fee, albeit indirectly by reimbursing a party which had actually remitted the fee, was entitled to claim the statutory credit against its gross receipts tax. *Hams Express, Inc. v. Commonwealth of*

*Pennsylvania,* 484 Pa. 167, 398 A.2d 997 (1979). The Applicants argue that the same principle requires that their payment of taxes, through the carriers they leased their vehicles to (represented by ATA), be recognized and their right to receive refunds be protected. They note that the Stipulations were entered into before the class was certified and thus no notice of the Stipulations or their terms was given. They assert that the representative plaintiffs did not protect their separate interests in agreeing to the Stipulations, and that certification of a subclass is necessary for this purpose.

The Application raises important questions that this Court is not prepared to answer simply on the basis of the documents filed. As we have concluded that refunds are required for a portion of the taxes paid for the year April 1, 1987—March 31, 1988, we will remand this matter to the Commonwealth Court for further proceedings on the Applicants' request for certification of a subclass. Should that court determine against certification of the subclass, the refunds will be processed pursuant to the Stipulation. Should a subclass be certified as requested, the court will determine the appropriate means for implementing the refunds ordered.

It is so ordered.

PAPADAKOS, J., files a dissenting opinion in which LARSEN, J., joins.

PAPADAKOS, Justice, dissenting.

I disagree with the decision of the majority in choosing a purely prospective application of the constitutional decision in the instant litigation such that the Appellees will not be beneficially affected by the change in law they successfully championed. In my judgment, the majority decision improperly ignores the recent U.S. Supreme Court decision in *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulations of Fla.,* 496 U.S.

18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (hereafter *"McKesson "*).

Previously in the course of the instant litigation (that is, in this very case), the U.S. Supreme Court decided that the fees or taxes challenged by Appellees violated the Commerce Clause of the United States Constitution. The matter was remanded to this Court at the request of the Appellants for further proceedings to determine whether the ruling should be applied retroactively or not. *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (decided June 23, 1987) (hereafter *"Scheiner"*). It is now before us.

In the meantime, an Arkansas highway use tax (similar to the fees or taxes involved herein) was upheld in that state's courts, but the U.S. Supreme Court vacated the Arkansas decision, and remanded the case to the Arkansas courts for further consideration in light of *Scheiner. American Trucking Associations, Inc. v. Gray*, 483 U.S. 1014, 107 S.Ct. 3252, 97 L.Ed.2d 752 (1987). Following remand, the Arkansas Supreme Court denied motions by the truckers to enjoin further collection of the tax and to order an escrow of the taxes to be collected pending that court's reconsideration of the case. The truckers then made an application for an injunction to Justice Blackman requesting that he order an escrow of the taxes to be collected pending final disposition of the case. The application was granted. *American Trucking Associations, Inc. v. Gray*, 483 U.S. 1306, 108 S.Ct. 2, 97 L.Ed.2d 790 (1987). Subsequently, the Arkansas Supreme Court ruled that the taxes at issue in that case were unconstitutional in light of *Scheiner;* but that *Scheiner* should *not* be applied retroactively in favor of the taxpayers in that case. It must be borne in mind that the taxpayers in the Arkansas case were not the identical parties who had brought the challenge in this state that resulted in the *Scheiner* decision. The Arkansas Supreme Court also ruled that the truckers would be allowed a refund only of the tax monies paid into escrow pursuant to Justice Blackman's order (295 Ark. 43, 746 S.W.2d 377

(1988)). The Arkansas case was again appealed to the U.S. Supreme Court who decided the matter in what is now known as *American Trucking Associations, Inc. v. Smith*, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (hereafter *"Smith"*). In *Smith*, the U.S. Supreme Court affirmed in part, reversed in part, and remanded. Although unable to agree on an opinion, five members of the Court agreed that Arkansas was not required to refund the tax payments at issue that were paid with respect to circumstances occurring prior to the date of the *Scheiner* decision (June 23, 1987), but that the nature and extent of relief available on the basis of *Scheiner* should be determined by the Arkansas courts with respect to circumstances occurring after the date of the *Scheiner* decision and before the date of Justice Blackman's escrow order. The four justice plurality opinion in *Smith* (authored by Justice O'Connor) expressly remands the case to the Arkansas Supreme Court in order to permit them "to determine the appropriate relief, not inconsistent with our decision today in *McKesson*, . . .". 496 U.S. at 200, 110 S.Ct. at 2343, 110 L.Ed.2d at 174. We must now turn, therefore, to a consideration of *McKesson*.

*McKesson* is a unanimous U.S. Supreme Court decision authored by Justice Brennan. In *McKesson*, the Florida Supreme Court affirmed a trial court decision that found a Florida excise tax scheme unconstitutional under the U.S. Constitution, but limited the challenging taxpayer's remedy to prospective relief only by refusing to order a refund for taxes previously paid. The U.S. Supreme Court reversed and remanded holding that the due process clause of the Federal Constitution's Fourteenth Amendment requires that, if a state penalizes its taxpayers for failure to remit their taxes in a timely fashion, and thus relegates the taxpayers to postpayment refund actions in which they could challenge the legality of the tax, the state must afford taxpayers meaningful retrospective relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional, which means that in refund actions, the

state must provide taxpayers not only with a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a clear and certain remedy for any erroneous or unlawful tax collection, so as to insure that the opportunity to contest the tax was a meaningful one.

It is clear from *Smith* that *Scheiner* may be applied prospectively. To the extent that state court discretion enters into that determination, I agree with the majority that in applying the tests enunciated in *Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we should reach that very conclusion. But I believe that *Scheiner* cannot be applied in a *purely* prospective way here to the detriment of Appellees themselves because *McKesson* requires us to consider the due process requirement of providing these taxpayers (who procured, as it were, the decision in *Scheiner*) with a meaningful remedy; and that in doing so the scales are unavoidably tipped against a *purely* prospective application of *Scheiner.* I would refund to Appellees all of the taxes they paid and for which they sought refunds in this litigation.

In short, as to the Arkansas taxpayers, for the period prior to the *Scheiner* decision (that is, prior to June 23, 1987), the determination on the unconstitutionality of the tax *could* but *need not* be applied retroactively—refunds could but need not be given based on balancing test enunciated in *Chevron Oil;* for the period between *Scheiner* and Justice Blackman's escrow order dated August 14, 1987, prospectivity could not apply and refunds must be given based on *McKesson;* and for the period after the escrow order, refunds would be required based on that order. As to the taxpayers in the instant case, *McKesson* would apply from the beginning of this litigation because Appellees instigated the decision in which the instant tax was declared unconstitutional and hence Appellees are entitled to refunds from the beginning.

This, after all, is in accord with the expressed agreement of the parties for on February 25, 1982, and February 9, 1983, the parties entered into stipulations approved by the

Commonwealth Court (see pp. 4 and 9 of Appellees' Application for Relief) dealing, respectively, with the marker fee tax and the axle tax at issue here, to the effect that:

> Within ninety (90) days after final decision on the merits in which [the tax] shall have been declared unconstitutional or its enforcement enjoined and all appeals have been exhausted or abandoned, respondents [the Commonwealth] shall refund all ... payments ... for the year beginning....

These stipulations were renewed annually and, in my judgment, the Commonwealth is bound by them.[1]

In the stipulations, the parties themselves gave definition to the term "merits" as involving the constitutionality of the taxes at issue without regard to prospective or retroactive application. After all, the refunds promised to be made by the Commonwealth could only be made on a retroactive basis since the taxes herein were not paid prospectively. There has been a "final decision on the merits." The stipulations of the parties themselves, as well as constitutional doctrines of fairness and due process, obligate us to give Appellees the full refunds to which they are entitled.

LARSEN, J., joins this dissenting opinion.

---

1. A review of the record shows that this is a class action. The stipulations entered into with the Commonwealth expressly promise refunds to "all affected motor carriers" if Appellees were to be successful in challenging the taxes at issue. (See Exhibits F through J of Appellees' Application for Relief—at paragraph 1 of each Stipulation.)